**Nos. 25-30644, 26-30301**

# In the United States Court of Appeals for the Fifth Circuit

JOEL GIROIR, ON BEHALF OF HIMSELF AND ALL SIMILARLY SITUATED INDIVIDUALS,

PLAINTIFF - APPELLEE

*V.*

GARY WESTCOTT, SECRETARY, DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS; LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS,

DEFENDANTS - APPELLANTS

BRIAN HUMPHREY, ON BEHALF OF HIMSELF AND ALL SIMILARLY SITUATED INDIVIDUALS; JOEL GIROIR, ON BEHALF OF THEMSELVES AND ALL SIMILARLY SITUATED INDIVIDUALS; BRYANT WHITE, ON BEHALF OF THEMSELVES AND ALL SIMILARLY SITUATED INDIVIDUALS,

PLAINTIFFS - APPELLEES

*V.*

GARY WESTCOTT, SECRETARY, DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS,

DEFENDANT - APPELLANT

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA (NOS. 3:20-CV-233, 3:21-CV-108)
(THE HONORABLE JOHN W. DEGRAVELLES, J.)

**SUPPLEMENTAL BRIEF OF PLAINTIFFS-APPELLEES**

CECELIA TRENTICOSTA KAPPEL
SAMANTHA POURCIAU
MICHAEL ALLEN
THE PROMISE OF JUSTICE INITIATIVE
1024 ELYSIAN FIELDS AVENUE
NEW ORLEANS, LA 70117
TEL: (504) 529-5955
CTKAPPEL@DEFENDLA.ORG
SBOSALAVAGE@DEFENDLA.ORG
MALLEN@DEFENDLA.ORG

WILLIAM MOST
MOST & ASSOCIATES
201 ST. CHARLES AVE. STE. 2500 #9685
NEW ORLEANS, LA 70170
TEL: (504) 509-5023
WILLIAMMOST@GMAIL.COM

JEREMY A. BENJAMIN
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 AVENUE OF THE AMERICAS
NEW YORK, NY 10019-6064
TELEPHONE: (212) 373-3000
JBENJAMIN@PAULWEISS.COM

# CERTIFICATE OF INTERESTED PERSONS

No. 25-30644

Joel Giroir, on behalf of himself and all similarly situated individuals,

Plaintiff - Appellee

*v.*

Gary Westcott, Secretary, Department of Public Safety and Corrections; Louisiana Department of Public Safety and Corrections,

Defendants - Appellants

*consolidated with*

No. 26-30301

Brian Humphrey, on behalf of himself and all similarly situated individuals; Joel Giroir, on behalf of themselves and all similarly situated individuals; Bryant White, on behalf of themselves and all similarly situated individuals,

Plaintiffs - Appellees

*v.*

Gary Westcott, Secretary, Department of Public Safety and Corrections, in his official capacity as Secretary of the Louisiana Department of Public Safety & Corrections,

Defendant - Appellant

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| **PARTIES** | **COUNSEL AND LAW FIRMS** |
|---|---|
| PLAINTIFFS-APPELLEES<br>Brian Humphrey, Bryant White, and Joel Giroir | THE PROMISE OF JUSTICE INITIATIVE<br>Cecelia Trenticosta Kappel<br>Samantha Pourciau<br>Michael Allen<br><br>MOST & ASSOCIATES<br>William Most<br><br>PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP<br>Jeremy A. Benjamin |
| DEFENDANTS-APPELLANTS<br>James LeBlanc, Former Secretary, Department of Public Safety and Corrections; Gary Westcott, Secretary, Department of Public Safety and Corrections | KEOGH, COX & WILSON, LTD.<br>Andrew Blanchfield<br><br>ATTORNEY GENERAL OF LOUISIANA<br>Elizabeth L. Brown<br>Jorge B. Aguinaga<br>Morgan Brungard |

/s/ *Jeremy A. Benjamin*
Jeremy A. Benjamin
*Counsel for Plaintiffs-Appellees*

## STATEMENT REGARDING ORAL ARGUMENT

Appellees respectfully submit that oral argument is unnecessary in this case. The district court's certification order is based on well-established legal principles and factual findings routinely made in the context of class certifications. Further, there is nothing novel about a federal court applying Rule 23 factors to certify a class when a state policy or practice is violating the Constitution on a class-wide basis. As such, the Court can resolve this case on the well-developed record.

Should the Court nevertheless conclude oral argument would assist in its decision, Appellees welcome the opportunity to present argument.

# TABLE OF CONTENTS

**Page**

**CERTIFICATE OF INTERESTED PERSONS** ........ ii

Statement Regarding Oral Argument ........ iv

Table of Contents ........ v

Table of Authorities ........ vi

Introduction ........ 1

Standard of Review ........ 4

Argument ........ 5

I. Qualified Immunity Does Not Preclude Certification ........ 5

A. Whether the Secretary Violated a Constitutional Right Will Be Resolved Based on Systemwide Evidence ........ 6

B. Whether the Right to Timely Release was Clearly Established Law Is a Common Question ........ 16

1. Whether the right to timely release was clearly established is a single legal question with a single class-wide answer ........ 17

2. The 48-hour boundary in the class definition does not make the inquiry individualized ........ 19

C. Defendant-Appellant Proposes an Unprecedented and Untenable Categorical Bar to Class Treatment ........ 21

II. The Requirements of Rule 23(b)(3) Are Met ........ 27

A. The District Court Acted Within Its Discretion in Finding the Class Action Is Superior ........ 27

B. Common Questions Predominate ........ 31

Conclusion....................................................................................................40

Certificate of Service..........................................................................................42

Certificate of Compliance ....................................................................................43

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander* v. *Hall*,
No. 4:20-cv-21, 2024 WL 4268017 (N.D. Miss. Sept. 23, 2024) ....................22

*Allison* v. *Citgo Petroleum Corp.*,
151 F.3d 402 (5th Cir. 1998)....................................................................38

*Amgen Inc.* v. *Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)..................................................................................16

*Angell* v. *GEICO Advantage Ins. Co.*,
67 F.4th 727 (5th Cir. 2023) .....................................................................38

*Barnes* v. *District of Columbia*,
242 F.R.D. 113 (D.D.C. 2007) ..................................................................24

*Barnes* v. *District of Columbia*,
793 F. Supp. 2d 260 (D.D.C. 2011) ...........................................................19

*Bell Atlantic Corp.* v. *AT&T Corp.*,
339 F.3d 294 (5th Cir. 2003)................................................................31, 39

*Bertulli* v. *Indep. Ass'n of Cont'l Pilots*,
242 F.3d 290 (5th Cir. 2001)....................................................................39

*Bogard* v. *Cook*,
586 F.2d 399 (5th Cir. 1978)................................................................21, 22

*Braidwood Mgmt., Inc.* v. *Equal Emp. Opportunity Comm'n*,
70 F.4th 914 (5th Cir. 2023) .....................................................................20

*Buchicchio* v. *LeBlanc*,
2024 WL 4603272 (5th Cir. Oct. 29, 2024) ...................................................8

*Bynum* v. *District of Columbia*,
214 F.R.D. 27(D.D.C. 2003) .....................................................................24

*Chavez* v. *Plan Benefit Servs., Inc.*,
957 F.3d 542 (5th Cir. 2020) .......... 15

*Connick* v. *Thompson*,
563 U.S. 51 (2011) .......... 35

*County of Riverside* v. *McLaughlin*,
500 U.S. 44 (1991) .......... 19

*Crittindon* v. *LeBlanc*,
37 F.4th 177 (5th Cir. 2022) .......... *passim*

*In re Deepwater Horizon*,
739 F.3d 790 (5th Cir. 2014) .......... 29, 38

*Douthit* v. *Jones*,
619 F.2d 527 (5th Cir. 1980) .......... 17

*Driver* v. *Marion Cnty. Sheriff*,
859 F.3d 489 (7th Cir. 2017) .......... 24, 34

*Elder* v. *Holloway*,
510 U.S. 510 (1994) .......... 15, 17

*Kentucky* v. *Graham*,
473 U.S. 159 (1985) .......... 1

*Hamm* v. *Ochsner-Acadia, LLC*,
187 F.4th 798 (5th Cir. 2026) .......... 4

*Healey* v. *Louisville Metro Gov't*,
2021 WL 149859 (W.D. Ky. Jan. 15, 2021) .......... 24, 34

*Hicks* v. *LeBlanc*,
81 F.4th 497 (5th Cir. 2023) .......... 2, 6, 17, 28

*Hicks* v. *LeBlanc*,
832 F. App'x 836 (5th Cir. 2020) .......... 9, 36

*Hill* v. *Cnty. of Montgomery*,
No. 14-933, 2018 WL 3979590 (N.D.N.Y. Aug. 20, 2018) .......... 24

*Hinojosa* v. *Livingston*,
807 F.3d 657 (5th Cir. 2015) .......... 13, 14

*Jones* v. *Diamond*,
594 F.2d 997 (5th Cir. 1979) .......... 21

*Keller* v. *Fleming*,
952 F.3d 216 (5th Cir. 2020) .......... 15

*Kenyatta* v. *Moore*,
744 F.2d 1179 (5th Cir. 1984) .......... 5

*Kincannon* v. *United Airlines, Inc.*,
168 F.4th 713 (5th Cir. 2026) .......... 27

*Madison* v. *Chalmette Refining, L.L.C.*,
637 F.3d 551 (5th Cir. 2011) .......... 31

*McNeal* v. *LeBlanc*,
90 F.4th 425 (5th Cir. 2024) .......... *passim*

*Menocal* v. *GEO Grp., Inc.*,
882 F.3d 905 (10th Cir. 2018) .......... 38

*Mitchell* v. *State Farm Fire & Casualty Co.*,
954 F.3d 700 (5th Cir. 2020) .......... 28

*Morrow* v. *Washington*,
No. 08-288, 2009 WL 2591382 (E.D. Tex. Aug. 20, 2009) .......... 22

*In re Nassau Cnty. Strip Search Cases*,
461 F.3d 219 (2d Cir. 2006) .......... 24

*Parker* v. *LeBlanc*,
73 F.4th 400 (5th Cir. 2023) .......... *passim*

*Porter* v. *Epps*,
659 F.3d 440 (5th Cir. 2011) .......... 17

*Portis* v. *City of Chicago*,
613 F.3d 702 (7th Cir. 2010) .......... 34

*Ross* v. *Gossett*,
No. 15-309, 2020 WL 1472072 (S.D. Ill. Mar. 26, 2020) ....................24

*Shumpert* v. *City of Tupelo*,
905 F.3d 310 (5th Cir. 2018), *as revised* (Sept. 25, 2018)....................17

*Soutter* v. *Equifax Info. Servs., LLC*,
307 F.R.D. 183 (E.D. Va. 2015) ....................37

*Steering Committee* v. *Exxon Mobil Corp.*,
461 F.3d 598 (5th Cir. 2006)....................38

*Taylor* v. *LeBlanc*,
Civ. No. 21-72, Dkt. 10 (M.D. La., Sept. 13, 2021) ....................36

*Thorpe* v. *Va. Dep't of Corr.*,
No. 10-007, 2023 WL 2908575 (W.D. Va. Apr. 12, 2023)....................24

*Torres* v. *S.G.E. Management, L.L.C.*,
838 F.3d 629 (5th Cir. 2016)....................31

*In re TWL Corp.*,
712 F.3d 886 (5th Cir. 2013)....................27

*Tyson Foods, Inc.* v. *Bouaphakeo*,
577 U.S. 442 (2016)....................5, 31

*Wal-Mart Stores, Inc.* v. *Dukes*,
564 U.S. 338 (2011)....................16

**Statutes**

42 U.S.C. § 1983 ....................6

**Other Authorities**

Fed. R. App. P. 28....................2

Fed. R. Civ. P. 23 ....................*passim*

Fed. R. Civ. P. 30 ....................32

## INTRODUCTION

Pursuant to the Court's October 26 directive, 25-30644 ECF No. 86, Plaintiffs-Appellees ("Appellees") file this supplemental brief to address whether Defendant-Appellant's ("Appellant" or the "Secretary") qualified immunity defense precludes class certification and whether Rule 23(b)(3)'s requirements were satisfied.[1] The answer to both questions follows from the same fact: this case turns on the conduct of a single official with respect to an established right, applied the same way to every member of the class. As such, qualified immunity does not bar class certification and Rule 23(b)(3)'s requirements are satisfied.

[1] Appellant, as relevant to the issues discussed here and as used throughout, is James LeBlanc. Although Gary Westcott was substituted on the docket as the Appellant in both of the consolidated appeals, James LeBlanc is the proper Appellant for damages claims, which are brought against James LeBlanc in his individual capacity. *See* 26-30301 ECF No. 50. The issues discussed herein bear only on Appellant's appeal of the certification of a damages class under Rule 23(b)(3) in *Humphrey* v. *LeBlanc*, No. 3:20-cv-233 (M.D. La.). Neither qualified immunity nor the requirements of Rule 23(b)(3) are at issue in Appellant's appeal of the certification of a class for injunctive relief in *Giroir* v. *LeBlanc*, No. 3:21-cv-108 (M.D. La.), under Rule 23(b)(2). *See Kentucky* v. *Graham*, 473 U.S. 159, 167 (1985) ("In an official-capacity action, [absolute and qualified immunity] defenses are unavailable.").

As Appellee in *Giroir* set forth in his brief[2] and as this court has repeatedly recognized, overdetention in Louisiana is not an isolated misfortune; it is systemic. The problem "is endemic in Louisiana, where the process for calculating release dates is so flawed (to put it kindly) that roughly one in four inmates released will have been locked up past their release dates." *Hicks* v. *LeBlanc*, 81 F.4th 497, 510 (5th Cir. 2023) ("*Hicks II*"). For example, the Department of Justice has found that of the 4,135 people released from DOC custody between January and April 2022, 1,108—26.8 percent—were held past their release dates, for a median of 29 days. ROA.25-30644.6363. Appellant has known of this problem since at least 2012, when the DOC's own Lean Six Sigma study documented it. *See Crittindon* v. *LeBlanc*, 37 F.4th 177, 183 (5th Cir. 2022); ROA.25-30644.1986–87.

The *Humphrey* class consists of people who were entitled to immediate release upon sentencing or parole revocation but were nonetheless held by the DOC for more than 48 hours. Each class member, by definition, "spent days

[2] For further context, as directed by this Court, and to the extent necessary for Appellees to preserve arguments, including that the class satisfies the requirements of Rule 23(a), Appellees incorporate by reference Mr. Giroir's briefing in the consolidated appeal. *See* 25-30644 ECF Nos. 36, 50; *see also* Fed. R. App. P. 28(i) ("In a case involving more than one appellant or appellee, including consolidated cases, . . . any party may adopt by reference a part of another's brief.").

or weeks in a cage when they should have been free." ROA.25-30644.4863. After extensive briefing and an evidentiary hearing, the district court certified the class as amended to focus on the common cause of this overdetention—LeBlanc's "failure to implement and maintain an adequate process for timely releasing inmates"—severing claims for mental anguish and emotional distress damages. ROA.25-30644.6298, 6356.

Qualified immunity does not change that analysis. Appellant's liability does not depend on any individual release; it turns on whether he knew of a statewide pattern of overdetention and chose not to address it. That is how this Court has analyzed his immunity defense in case after case—by examining his knowledge of "a pattern of similar violations at the DPSC," not the particulars of any one individual's sentence. *McNeal* v. *LeBlanc*, 90 F.4th 425, 431 (5th Cir. 2024); *see Parker* v. *LeBlanc*, 73 F.4th 400, 408 (5th Cir. 2023); *Crittindon*, 37 F.4th at 188. Whether Appellant had that knowledge, whether his inaction was objectively unreasonable, and whether the right to timely release was clearly established are questions with a single answer for the entire class. As the district court found, "deliberate indifference is the central issue in this case, and variations in individual circumstances do not change that fact." ROA.25-30644.6379. Appellant's contrary position—that asserting

qualified immunity categorically forecloses Rule 23(b)(3) certification—has no support in the decisions of this or any other court.

Rule 23(b)(3) is likewise satisfied. A class action is not only superior, it is the only realistic means of adjudicating these claims: over five years, approximately a dozen individual overdetention suits were filed in Louisiana, on behalf of approximately ten thousand overdetained persons. *See* ROA.25-30644.4864. If the class is decertified, thousands of people who were held without lawful authority will likely be left with no meaningful way to vindicate their rights. Moreover, the predominant questions—whether Appellant maintained the challenged policies, whether those policies caused class members' overdetention, and whether Appellant acted with deliberate indifference—are common to every class member. ROA.25-30644.6396–97. Furthermore, class membership can be confirmed from the DOC's own records in roughly five minutes per person. ROA.25-30644.6399.

The district court rigorously applied Rule 23 to an extensive record. Its certification decision was well within its discretion and should be affirmed.

## STANDARD OF REVIEW

Where the district court "remains faithful to Rule 23's framework," certification of a class action under Rule 23 is within its "broad discretion."

*Hamm* v. *Ochsner-Acadia, LLC*, 187 F.4th 798, 804 (5th Cir. 2026) (quoting *Cleven* v. *Mid-Am. Apartment Communities, Inc.*, 20 F.4th 171, 176 (5th Cir. 2021)). This Court affirms class certification unless the district court abuses that discretion. *Id.*

## ARGUMENT

### I. Qualified Immunity Does Not Preclude Certification

The Secretary's qualified immunity defense does not preclude class certification. Qualified immunity is a merits defense, *see Kenyatta* v. *Moore*, 744 F.2d 1179, 1184 (5th Cir. 1984), and Rule 23 does not ask whether a defendant has a defense; rather, it asks whether the questions that the defense raises can be answered with common, class-wide proof. *See, e.g.*, *Tyson Foods, Inc.* v. *Bouaphakeo*, 577 U.S. 442, 453 (2016) (explaining that "a common question is one where the same evidence will suffice" for each class member or where "the issue is susceptible to generalized, class-wide proof," and noting that a class may be certified even when some matters, including "some affirmative defenses" are individualized). Here, the Secretary's merits defense of qualified immunity turns on his own policies, his own knowledge, and his own conduct as the head of a single statewide agency, and does not rely on individualized proof beyond an objective review of DOC's own records.

The Secretary's qualified immunity defense turns on "two inquiries": "whether [he] violated a constitutional right," and, "whether the right at issue was clearly established at the time of the alleged misconduct." *Hicks II*, 81 F.4th at 503 (cleaned up); *see also McNeal* v. *LeBlanc*, 90 F.4th 425, 431 (5th Cir. 2024). In this case, both inquiries can be answered on a class-wide basis. *First*, the Secretary's constitutional violation stems from his failure to adopt policies, a standard constitutional doctrine presenting questions that can be resolved by reference to DOC-wide evidence, as they have been resolved by this Court in numerous similar cases. *Second*, whether the right to timely release was clearly established during the class period is a pure question of law with a single answer for every class member. *Finally*, the Secretary's contrary position—that a Rule 23(b)(3) class is *categorically* unavailable when qualified immunity is raised—has no support in the decisions of this Court or any other.

### A. Whether the Secretary Violated a Constitutional Right Will Be Resolved Based on Systemwide Evidence

The Secretary is liable under 42 U.S.C. § 1983 if he adopts or fails to adopt policies thereby causing constitutional injury, and has done so with deliberate indifference. *See Crittindon* v. *LeBlanc*, 37 F.4th 177, 186 (5th Cir. 2022). That standard is, by its nature, a systemwide inquiry, focusing on what

the official, here Secretary LeBlanc, knew about the pattern and what he chose to do about it—not the idiosyncrasies of any one detention. And that standard will be proven by common evidence.

This Court's own overdetention decisions confirm the point. In case after case in recent years brought by plaintiffs illegally incarcerated beyond the terms of their sentence by DOC, this Court has repeatedly addressed the Secretary's liability by examining DOC-wide evidence:

- *Crittindon* v. *LeBlanc* (2022) denied summary judgment to Secretary LeBlanc on qualified immunity grounds, finding sufficient evidence existed for a jury to conclude he had demonstrated deliberate indifference and violated plaintiffs' right to timely release from prison based on a study showing that DOC had, every year, held an average of 2,252 people past their release dates, each for an average of 72 days beyond their sentence. 37 F.4th at 187. The panel noted that Secretary LeBlanc was a "champion" of this study and was made aware of its findings. *Id.* In light of this DOC-wide evidence, this Court held that a reasonable factfinder could conclude that Secretary LeBlanc was deliberately indifferent. *Id.* at 187–88.

- *Parker* v. *LeBlanc* (2023) held that allegations that Secretary LeBlanc implemented deficient policies and was aware of a pattern of overdetention were sufficient to state a claim. 73 F.4th 400, 406 (5th Cir. 2023).
- *McNeal* v. *LeBlanc* (2024) held that allegations of evidence showing a pattern of overdetention, including the Lean Sigma Study, a 2017 legislative audit, testimony by DOC employees admitting to "rampant overdetention," and outreach from public officials, were sufficient to allege deliberate indifference and, if true, state a constitutional violation. 90 F.4th 425, 431–32 (5th Cir. 2024).
- *Buchicchio* v. *LeBlanc* (2024) affirmed the denial of Secretary LeBlanc's motion to dismiss on qualified immunity grounds, holding again that DOC-wide evidence—including a 2017 DOC investigation showing an average of 200 cases per month considered an "immediate release" and a 2018 DOC document indicating that, on average, prisoners were overdetained by 38.6 days, among other evidence—was sufficient to allege a pattern of violations to establish deliberate indifference. 2024 WL 4603272, at *3 (5th Cir. Oct. 29, 2024) (per curiam).

In particular, in *McNeal* this Court held that "LeBlanc's knowledge of three facts put him on notice of 'a pattern of similar constitutional violations by untrained employees,'" sufficient to deny qualified immunity. 90 F. 4th at 432. Those three facts were a 2017 audit, a 2018 editorial, and testimony of former employees about the pattern. *Id.* None of those three facts were tied to a particular person's overdetention.

Indeed, even in an overdetention case where this Court *granted* the Secretary's qualified immunity defense for the plaintiff's failure to allege a constitutional violation, the Court commented that the allegations of DOC-wide evidence could support liability for "the failure to process a prisoner's release or immediately compute an inmate's sentence after being sentenced to time served." *Hicks* v. *LeBlanc*, 832 F. App'x 836, 842 (5th Cir. 2020) ("*Hicks I*"). Describing LeBlanc's deliberate indifference in *Hicks I* as a "close call," the Court held only that plaintiff failed to plead the right pattern or policy to implicate LeBlanc. *Id.*

Each of these cases—*Crittindon*, *Parker*, *McNeal*, *Buchicchio,* and *Hicks I*—involved different plaintiffs, different sentences, different criminal histories, and different circumstances. Yet, each indicates the Secretary's liability for purposes of the qualified immunity inquiry can be assessed based

on system-wide evidence (or allegations) about DOC's policies, the consequences of those policies, and the Secretary's knowledge and action or inaction. If the deliberate indifference prong of the qualified immunity defense can be answered with systemwide proof, rather than plaintiff-specific proof, in several other cases, so too can it be answered with systemwide proof here on behalf of the class.

In particular, the Secretary's liability to every class member will turn on two questions: (1) whether DOC's release process caused class members' overdetention, and (2) whether the Secretary was deliberately indifferent to the failures of that process. *See Crittindon*, 37 F.4th at 186. Both questions can be answered on a common basis.

*First*, whether DOC's release process caused class members' overdetention is a common question. As an initial matter, the certified class reaches only those released "more than 48 hours past the date that they were remanded to the DOC's custody due to Defendant's failure to implement and maintain an adequate process for timely releasing inmates." ROA.25-30644.6408. Thus, the class is defined by reference to the class-wide causation issue of whether DOC's release policies (or lack of policies) under Secretary LeBlanc caused overdetention. ROA.25-30644.6370 ("[T]he key question is the

harm caused by LeBlanc's unlawful policies, not individual circumstances for each Plaintiff."). At a trial on the merits in this litigation, Appellees will answer this causation question by reference to class-wide, not individualized, evidence, which will demonstrate that the cause of class members' overdetention was DOC policy. Such evidence includes DOC's process for the delivery of sentencing paperwork from parish jails; DOC's time-computation and data-management practices; and the lack of standardized staff training. *See* ROA.25-30644.6299–6301, 6327–30.

*Second*, deliberate indifference is also a common question. The deliberate indifference inquiry will focus on whether the Secretary had notice of a pattern of similar constitutional deprivations, and on whether he failed to adopt a policy when the obvious consequence would be a deprivation of constitutional rights. *See Crittindon*, 37 F.4th at 186. In other words, the ultimate question of the Secretary's deliberate indifference is: did the Secretary know of a pattern of overdetention, and did he choose not to correct it?

This question of the Secretary's knowledge and conduct will be decided on the same evidence for every class member. In particular, the Secretary has already admitted that DOC is legally bound to release people on time and that

it is a problem for even one person to be held past their release date. ROA.25-30644.6299, 6321–22. The evidence will also show that the Secretary learned no later than 2012 that thousands of people in DOC custody were being held past their release dates, that DOC in 2019 admitted that its paperwork process was causing overdetention, and that the Department of Justice found in 2023 that DOC's violations were "severe, systemic, and . . . both caused by and perpetuated by serious ongoing deficiencies" in DOC's policies and practices. *See* ROA.25-30644.6321–24, 6327–30. And the evidence will show that despite knowing of the overdetention crisis, Secretary LeBlanc chose not to implement corrective measures to ameliorate DOC's broken release system. All of this evidence will be the same for every class member.

Because both elements of the claim against Appellant—causation and deliberate indifference—will be proved (or disproved) with the same systemwide evidence, the first prong of the Secretary's qualified immunity defense presents a common question whose answer will drive the resolution of every member's claim.

The Secretary's anticipated arguments to the contrary fail.[3] *First*, the Secretary has argued that his liability cannot be determined on a class-wide basis because the cause of delay in release may differ from class member to class member. *See* Appellant's Pet. for Permission to Appeal, No. 25-90028, ECF No. 2 ("Pet.") at 19–21. This misapprehends the nature of policy-based constitutional claims. It is foundational that what matters for the Secretary's liability is whether DOC's policies or lack thereof caused constitutional violations and whether the Secretary acted with deliberate indifference through those policies, not whether an individual overdetention was reasonable. *See, e.g.*, *Crittindon*, 37 F.4th at 186 (explaining that policy-based claims depend on whether failure to adopt policies "causally results in a constitutional injury"). The district court got this right when it concluded, in certifying the class, that overarching questions concerning DOC's policies and the Secretary's deliberate indifference predominate over questions about individual class members' release circumstances. ROA.25-30644.6397.

[3] Because the Court directed the Parties to submit simultaneous supplemental briefing, Appellees do not yet know precisely the arguments the Secretary will advance. Appellees therefore respond to the arguments the Secretary has made in his Rule 23(f) briefing and his briefing below, which Appellees anticipate he will renew.

The Secretary next contends that the class must prove his knowledge of each class member's specific cause of delay. *See* Pet. 23; Appellant's Reply in Supp. of Pet., No. 25-90028, ECF No. 21 ("Reply Br.") at 8. That is not the law. The Secretary's deliberate indifference turns on whether he had notice of "[a] pattern of similar constitutional violations," not knowledge of each overdetention. *See Crittindon*, 37 F.4th at 186. In *Hinojosa* v. *Livingston*, this Court held that prison officials cannot escape liability "by arguing that, while they allegedly were aware of and consciously disregarded a substantial risk of serious harm to a discrete class of vulnerable inmates, they were not aware that the particular inmate involved in the case belonged to that class." 807 F.3d 657, 667 (5th Cir. 2015) (citing *Farmer* v. *Brennan*, 511 U.S. 825, 843 (1994)).

Requiring proof that the Secretary knew the particulars of every class member's case would make policy-based liability impossible for exactly the kind of systemic failure this Court found actionable in cases like *Crittindon* and *Parker*. The class claim here, overdetention caused by the Secretary's failure to maintain appropriate release processes, alleges precisely the kind of claim that this Court found sufficient in those cases.

Finally, to the extent the Secretary argues that his recent remedial efforts—such as the electronic portal—negate his deliberate indifference, *see* Pet. 24, that argument will likewise be resolved on a class-wide basis. The district court acknowledged DOC's purported remedial measures and identified as common, predominating questions "whether the DOC's latest efforts and electronic submission portal resolved the DOC's overdetention crisis," and "whether the DOC could have engaged in those efforts and implemented those systems sooner." ROA.25-30644.6397. The answers to those questions are categorical and do not vary from one class member to the next.

In sum, the Secretary's liability for his failure to adopt sufficient policies—i.e., the first prong of his qualified immunity defense—will rise or fall on common, systemwide proof. And, contrary to the Secretary's suggestion that the district court ignored his defense, the court expressly acknowledged his argument that qualified immunity "requires individualized determinations," and held that the dispositive questions concerning the Secretary's policies and his deliberate indifference are common and predominate. ROA.25-30644.6378–80, 6388, 6396–97. That is precisely the

rigorous analysis Rule 23 requires. *See Chavez* v. *Plan Benefit Servs., Inc.*, 957 F.3d 542, 545 (5th Cir. 2020).

### B. Whether the Right to Timely Release was Clearly Established Law Is a Common Question

The second prong of the qualified immunity inquiry asks whether the right at issue was clearly established at the time of the challenged conduct. *Keller* v. *Fleming*, 952 F.3d 216, 221 (5th Cir. 2020). That is a pure question of law, and its answer does not change from one class member to the next. *See Elder* v. *Holloway*, 510 U.S. 510, 516 (1994) ("Whether an asserted federal right was clearly established at a particular time, so that a public official who allegedly violated the right has no qualified immunity from suit, presents a question of law."). A question that can be answered "in one stroke" is the paradigm of a common question under Rule 23. *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338, 350 (2011).

The Secretary's attempts to inject individualized issues into this prong fail for two reasons. *First*, whether the Secretary's challenged conduct violated a clearly established right is a single legal question with a single answer, and this Court has already answered it repeatedly. *Second*, neither the absence of a bright-line rule for permissible delay nor the 48-hour boundary in the class definition makes that inquiry individualized.

*1. Whether the right to timely release was clearly established is a single legal question with a single class-wide answer*

The Secretary has previously argued that "the class elides clearly established law" and impermissibly shifts to him the burden of disproving clearly established violations. Reply Br. 2, 6–7. This is a merits argument, not a certification argument. "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc.* v. *Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). Put differently, whether the right was clearly established, and when, bears on the Secretary's ultimate defense, *see Elder*, 510 U.S. at 516, not whether a class should be certified. And for certification purposes, the answer is common either way: because the challenged conduct—the Secretary's response to a known, statewide pattern of overdetention—is the same for every class member, whether that conduct violated clearly established law has one answer for the entire class.

Furthermore, although the Court need not reach the merits of the "clearly established" question to resolve this appeal, the answer is not in doubt. The touchstone of that inquiry is whether the law gave the official "fair warning" that his conduct was unconstitutional. *Shumpert* v. *City of Tupelo*, 905 F.3d 310, 321 (5th Cir. 2018), *as revised* (Sept. 25, 2018). Applying that standard, this Court has repeatedly held that the right to timely release from

detention is clearly established and has three times denied the Secretary qualified immunity in similar cases. *See Crittindon* v. *LeBlanc*, 37 F.4th 177, 186–88 (5th Cir. 2022); *Parker* v. *LeBlanc*, 73 F.4th 400, 408 (5th Cir. 2023); *McNeal* v. *LeBlanc*, 90 F.4th 425, 430–33 (5th Cir. 2024); *see also Hicks* v. *LeBlanc*, 81 F.4th 497, 504 (5th Cir. 2023); *Porter* v. *Epps*, 659 F.3d 440, 445 (5th Cir. 2011); *Douthit* v. *Jones*, 619 F.2d 527, 532 (5th Cir. 1980). And in each case, it found fair warning not in any feature of the individual plaintiff's release, but in the Secretary's knowledge of a statewide problem and his failure to address it. *See Crittindon*, 37 F.4th at 188 (because Secretary LeBlanc knew of "a month-long delay in receiving paperwork from the local jails," he had "'fair warning' that [DOC's] failure to address this delay would deny prisoners . . . their immediate or near-immediate release upon conviction"); *Parker*, 73 F.4th at 408 (same); *McNeal*, 90 F.4th at 433 (Secretary LeBlanc had "'fair warning that his failure to address' rampant overdetention" would deny prisoners timely release).

Because whether the right to timely release was clearly established is a pure question of law, directed at the Secretary's own conduct and not at the circumstances of any individual class member, the second prong poses a common question that supports class certification.

*2. The 48-hour boundary in the class definition does not make the inquiry individualized*

The Secretary has also argued that, because this Court has declined to define a delay shorter than a month as unconstitutional, the class definition's 48-hour threshold will require that reasonableness be adjudicated "one by one." Mem. in Support of Mot. to Stay, *Humphrey* v. *LeBlanc*, No. 3:20-cv-233 ECF No. 287-1 at 4 (citing *Crittindon*, 37 F.4th at 188). That argument rests on a misreading of precedent and, in any event, does not bear on certification.

*First*, the 48-hour threshold is a definitional boundary, not a liability standard. The district court adopted it as a "'practical compromise' between the rights of detained inmates and the realities of processing release orders," and held that it "is no hinderance to certification." ROA.25-30644.6360 (quoting *Healey* v. *Louisville Metro Gov't*, 2021 WL 149859, at *19 (W.D. Ky. Jan. 15, 2021)). This Court should affirm that holding. The 48-hour threshold is not arbitrary. The Department of Justice, after its own investigation of DOC, concluded that overdetention of 48 hours or more can violate the Constitution. ROA.25-30644.6366. The threshold is also conservative. In *County of Riverside* v. *McLaughlin*, 500 U.S. 44 (1991), the Supreme Court identified 48 hours as the outer bounds of reasonable time to perform the

administrative tasks and release a person entitled to be free. *Id.* at 57. Since then, courts "appear to agree that the maximum permissible administrative delay in the overdetention context likely falls well short of the 48-hour horizon set out in *McLaughlin*." *Barnes* v. *District of Columbia*, 793 F. Supp. 2d 260, 276 (D.D.C. 2011). In any event, the threshold defines class membership; it does not determine liability.

*Second*, *Crittindon* does not stand for the proposition the Secretary ascribes to it. The *Crittindon* court observed only that "courts have declined to define the amount of delay that is reasonable," and then denied the officials qualified immunity. *Crittindon*, 37 F.4th at 186–88. Nothing in *Crittindon* suggests that delays shorter than thirty days are constitutionally permissible, much less that their reasonableness must be litigated person by person.

*Third*, even if it were ultimately determined that only delays somewhere between 48 hours and 30 days violated clearly established law, the appropriate response would be for the district court to narrow the class or create subclasses upon coming to that merits conclusion—not to deny certification. *See Braidwood Mgmt., Inc.* v. *Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 934 (5th Cir. 2023) (district courts "may modify the classes to fit the requirements better and should not dismiss an action purely because the

proposed class definition is too broad). That determination, too, would apply uniformly across the class, using objective data in DOC's own records. In either event, the clearly established prong will be resolved on a class-wide basis.

### C. Defendant-Appellant Proposes an Unprecedented and Untenable Categorical Bar to Class Treatment

The Secretary asks this Court to announce a new categorical rule "that a (b)(3) class is unavailable when qualified immunity is raised." Pet. 11. No court has adopted such a rule, and this Court should reject the Secretary's invitation to do so now.

The Secretary points to decades-old cases, *Jones* v. *Diamond*, 594 F.2d 997 (5th Cir. 1979) and *Bogard* v. *Cook*, 586 F.2d 399 (5th Cir. 1978), arguing that they cast doubt on whether claims implicating qualified immunity may ever proceed as a Rule 23(b)(3) class, because resolving the defense would require examining the facts of each class member's detention. Pet. 9. Neither decision bears that weight.

*Jones* involved only a Rule 23(b)(2) class, and the language the Secretary invokes is textbook dicta: it appears in a footnote addressing pendent state-law damages claims related to prison assaults, in which the Court observed that the trial court "would also have to analyze the facts surrounding each

particular incident of violence" to evaluate the officials' defenses. 594 F.2d at 1022–23 & n.24. Critically, this Court expressly declined to decide whether those claims could proceed under (b)(3), because that question was not before it. *Id.*

*Bogard* was an individual damages suit, not a class action. The language the Secretary cites in that case addressed whether Bogard's class membership in an earlier non-damages class action barred his later individual damages suit. 586 F.2d at 406–09. Again in dicta, this Court noted that a (b)(3) class, which was never sought in the prior action, would have been difficult to certify because it—unlike this case—involved a "laundry list of alleged abuses." *Id.* at 407–09. Accordingly, neither *Jones* nor *Bogard* held that a qualified immunity defense precludes certification under Rule 23(b)(3); indeed, that issue was never presented to the court in either case.

Nor do the district court decisions on which the Secretary relies support a categorical bar. *See* Reply Br. 4–5, 7. *Alexander* v. *Hall*, 2024 WL 4268017 (N.D. Miss. Sept. 23, 2024), involved no "uniform practice or policy," *id.* at *12, but rather assorted injuries with various causes within and across four proposed subclasses, *id.* at *6–*9. And in *Morrow* v. *Washington*, 2009 WL 2591382 (E.D. Tex. Aug. 20, 2009), class certification was again inappropriate

for lack of predominance. The proposed class definition turned on whether each class member's search or seizure was "unreasonable" and in violation of the Fourth Amendment, *id.* at *1, requiring individualized determinations on the merits and qualified immunity as to each proposed member. *See id.* at *1, *2. The court made no mention of a categorical rule that qualified immunity automatically defeats certification; rather, the class definition was modified to comport with Rule 23(b)(2). *See id.* at *2.

Here, by contrast, the key question is not whether any one detention was reasonable but whether LeBlanc's policies caused the violations. ROA.25-30644.6397. As explained in Part I.A *supra*, this Court's own qualified immunity decisions in Louisiana overdetention cases confirm that the defense, as applied to the Secretary, turns on that common question. Neither *Alexander* nor *Morrow* involved a defense that turns, as this one does, on a single official's knowledge of a documented, systemwide pattern.

In sum, the very most the Secretary's cited authorities show is that, on particular facts, class treatment was not appropriate in *those* cases. They merely restate the rule that predominance is not met when resolving the qualified immunity question requires individualized proof. But where, as here,

qualified immunity turns on a single official's knowledge of and response to a statewide pattern, the defense is a common question like any other.

Indeed, far from imposing a categorical bar, courts nationwide routinely certify Rule 23(b)(3) classes in cases challenging prison and jail policies, including where individual-capacity defendants raise individualized defenses. *See, e.g.*, *Thorpe* v. *Va. Dep't of Corr.*, 2023 WL 2908575, at *12 (W.D. Va. Apr. 12, 2023) (certifying class over qualified immunity predominance objections because the defense hinged on the "individual defendant's knowledge of the risk of substantial harm" caused by the challenged policy); *Ross* v. *Gossett*, 2020 WL 1472072, at *6 (S.D. Ill. Mar. 26, 2020) (certifying 23(b)(3) class challenging prison shakedowns); *Hill* v. *Cnty. of Montgomery*, 2018 WL 3979590, at *14 (N.D.N.Y. Aug. 20, 2018) (certifying 23(b)(3) class challenging inadequate prison nutrition); *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 229–30 (2d Cir. 2006) (remanding to district court for certification of 23(b)(3) class challenging strip search policy despite individualized inquiry of whether given searches were reasonable). Overdetention classes in particular have been certified where, as here, the class is defined by a systemic cause. *See, e.g., Healey*, 2021 WL 149859, at *19–23 (certifying subclasses of persons overdetained "due to the failure of Defendants to implement and maintain an

adequate process for timely releas[e]"); *Barnes* v. *District of Columbia*, 242 F.R.D. 113, 121–24 (D.D.C. 2007); *Bynum* v. *District of Columbia*, 214 F.R.D. 27, 39–41(D.D.C. 2003); *Driver* v. *Marion Cnty. Sheriff*, 859 F.3d 489, 492–94 (7th Cir. 2017).

To the extent the Secretary contends that some of these decisions did not expressly address qualified immunity, *see* Reply Br. 7, that observation confirms the governing principle: a defense (qualified immunity included) defeats predominance only when resolving it requires individualized proof. Where the defense turns instead on a defendant's own policies and knowledge, it is answered by common evidence and poses no obstacle to certification.

The Secretary's remaining objections, each framed in terms of qualified immunity, do not warrant disrupting the district court's certification decision.

*Discovery and timing*. The Secretary invokes qualified immunity's protection from pretrial discovery and gestures to the principle that the defense should be resolved at the earliest possible stage. Pet. 10–11; Reply Br. 3, 5–6. But the Secretary has never moved on the defense. He answered the complaint rather than moving to dismiss, *see* ROA.25-30644.1110, and he has not sought judgment on the pleadings or summary judgment on qualified immunity grounds. Class discovery has occurred, and the district court held

an evidentiary hearing on certification on October 19, 2023. ROA.25-30644.6296. A defendant who has chosen not to invoke a defense cannot fault class certification for that failure.

*Free-riding*. Relatedly, the Secretary mixes metaphors and contends that absent class members will "free-rid[e]" or "coat-tail[]" on the named plaintiffs' allegations. Reply Br. 3, 6. But absent members' claims depend on the same common allegations and ultimately will rise or fall on the same common evidence of DOC's policies and the Secretary's knowledge. That is not free-riding; it is the very purpose of class treatment provided for by Rule 23.

*Burden-shifting.* The Secretary complains that class treatment will flip the burden and force him to disprove each member's overdetention. Reply Br. 3, 6. That has nothing to do with qualified immunity, and it is untrue. Whether a person was overdetained at all is a question of class membership, resolved by objective, clerical review of DOC's own records. *See infra* Part II.B.4.

In short, every issue the Secretary's qualified immunity defense raises—whether his policies caused overdetention, whether he was deliberately indifferent to it, and whether the right to timely release was

clearly established—will be answered with common proof. The defense does not preclude certification.

## II. The Requirements of Rule 23(b)(3) Are Met

### A. The District Court Acted Within Its Discretion in Finding the Class Action Is Superior

Rule 23(b)(3) requires the district court to find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Rule sets forth four non-exhaustive factors to guide a "necessarily . . . comparative" superiority inquiry: (i) class members' interest in individually controlling separate actions, (ii) the extent of litigation already begun, (iii) the desirability of concentrating the claims in one forum, and (iv) the likely difficulties of management. *In re TWL Corp.*, 712 F.3d 886, 895–96 (5th Cir. 2013); *see* Fed. R. Civ. P. 23(b)(3). The "'most compelling rationale for finding superiority in a class action' is 'the existence of a negative value suit.'" *Kincannon* v. *United Airlines, Inc.*, 168 F.4th 713, 734 (5th Cir. 2026), *cert. denied*, 2026 WL 2976481 (U.S. Oct. 5, 2026), (quoting *Castano* v. *American Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996)). The superiority inquiry is "fact-specific" and "varies depending on the circumstances of each case." *Id.* (quoting *Ibe* v. *Jones*, 836 F.3d 516, 529 (5th Cir. 2016)). The district court properly weighed those factors when it

determined the class action was superior, and its findings are amply supported by the record.

Appellant claims that a handful of individual lawsuits proves class members can fend for themselves. Pet. 28. But those lawsuits demonstrate just the opposite. Crucially, the district court observed that "the cost of bringing the action—particularly those challenging the systematic policies of LeBlanc—outweigh[s] any individual recovery," and that "there are thousands of overdetentions and only a handful of claims." ROA.25-30644.6397–98). Indeed, if the class were decertified, the thousands of individuals who were deprived of their liberty without justification likely would go uncompensated.

A district court does not abuse its discretion in finding a class superior where many claims "are likely to be too small to engage in separate litigation." *Mitchell* v. *State Farm Fire & Casualty Co.*, 954 F.3d 700, 712 (5th Cir. 2020). This case fits that description. Although overdetention is, as this Court has observed, "endemic in Louisiana," *Hicks* v. *LeBlanc*, 81 F.4th 497, 510 (5th Cir. 2023), over the past five years there have been approximately a dozen individual overdetention lawsuits in Louisiana, and approximately ten thousand overdetained persons. *See* ROA.25-30644.4864. The reason is plain:

to recover, each class member would have to prove "the DOC's systematic practice of overdetention and LeBlanc's deliberate indifference to it," which "will require considerable resources that are difficult for formerly incarcerated individuals to muster, and would likely outweigh the recovery obtained." ROA.25-30644.5693. Indeed, Judge Jones recognized this conundrum when she asked: "why didn't someone file a class action?" Audio Recording: Oral Argument at 23:02-23:07, *McNeal* v. *LeBlanc*, Case No. 22-30180 (5th Cir. Sept. 6, 2023), available at https://www.ca5.uscourts.gov/OralArgRecordings/22/22-30180_9-6-2023.mp3.

Despite overwhelming evidence that individual plaintiffs cannot afford to and, therefore, do not bring these claims, Appellant argues that the availability of attorney's fees and punitive damages renders these claims viable on an individual basis. ROA.25-30644.4441). The district court properly rejected that argument by analyzing what has actually happened, finding that, "as a practical matter," those claims have not been brought. ROA.25-30644.6397.

Further, class adjudication in this case achieves the "economies of time, effort, and expense" that Rule 23(b)(3) was designed to achieve. *In re Deepwater Horizon*, 739 F.3d 790, 817 (5th Cir. 2014). These claims under "the

same bodies of law" are "against a single supervisor, operating a single agency, causing the same basic injury, in the same manner." ROA.25-30644.6397 (citation omitted). As the district court found, concentrating that litigation in a single forum is plainly desirable. *Id.*; *see* Fed. R. Civ. P. 23(b)(3)(C). Answering common questions once is superior to answering them thousands of times.

Appellant further argues that class adjudication would be unmanageable, repackaging his unmeritorious predominance objections. Pet. 28. Those objections fail for the reasons set forth *infra* Part II.B. Appellees' claims identify a single cause of overdetention capable of class-wide proof: Appellant's policies. ROA.25-30644.6397 ("[T]he key is not, as Defendant argues, whether an individual detention was reasonable, but rather whether LeBlanc's policies caused constitutional violations and whether he acted with deliberate indifference through those policies."). Identifying class members is an objective, clerical task, *see infra* Part II.B.4, and the district court avoided individualized damages calculations by excluding claims for mental anguish from the class, *see* ROA.25-30644.6398–99.

The district court considered the relevant factors under Rule 23(b)(3) and reasonably concluded that a class action is superior. *See* ROA.25-

30644.6397–99. That conclusion was not an abuse of discretion—and reversing it would leave thousands of overdetained people without any remedy.

### B. Common Questions Predominate

Rule 23(b)(3) further requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The inquiry "calls upon courts to give careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods* v. *Bouaphakeo,* 577 U.S. 442, 453 (2016). A question is common where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (citation omitted). The analysis "entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class." *Bell Atlantic Corp.* v. *AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003) (citation omitted). It therefore begins "with the elements of the underlying cause of action," *Torres* v. *S.G.E. Management, L.L.C.*, 838 F.3d 629, 636 (5th Cir. 2016) (citation omitted), and asks "how a trial on the merits would be conducted if a class were certified," *Madison* v. *Chalmette Refining, L.L.C.*, 637 F.3d 551, 555 (5th Cir. 2011) (citation omitted). The district court followed that

framework, and its conclusion that common questions predominate is amply supported. ROA.25-30644.6396–99.

**1. Every element of liability turns on common proof.** Appellant's liability depends on whether he "implement[ed] unconstitutional policies that causally result in the constitutional injury" and acted "with deliberate indifference." ROA.25-30644.6396 (quoting *Skinner* v. *Ard*, 519 F. Supp. 3d 301, 317 (M.D. La. 2021)). The state-law claims likewise turn on whether class members were restrained "without color of legal authority" and whether Appellant acted as a reasonably prudent official. *Id.* at 103 (ROA.25-30644.6396) (citing *Imani* v. *City of Baton Rouge*, 614 F. Supp. 3d 306, 381, 383 (M.D. La. 2022)).

As the district court found, "[t]he key questions in this case are: (1) did LeBlanc have certain policies or customs; (2) which caused the overdetentions of the class members; and (3) did LeBlanc act with deliberate indifference." ROA.25-30644.6396–97. Each of those questions will be answered with the same evidence for every class member: the 2012 Lean Six Sigma study, the 2017 legislative audit, the Department of Justice's findings, the DOC's pull documents, and the testimony of the Secretary and his Rule 30(b)(6) designees. *See* ROA.25-30644.1986–87. So too will the subsidiary questions

the district court identified, including whether the electronic submission portal resolved the crisis, whether it could have been implemented sooner, and whether the DOC could have required clerks and sheriffs to transmit pre-classification documents faster. ROA.25-30644.6397. "All of these overarching issues predominate over any question related to the individual class members' circumstances." *Id.*

Appellant's own defenses confirm the point. He contends that he adopted adequate mitigation measures and that delays are attributable to sheriffs and clerks he does not control. ROA.25-30644.4419–20. Those are merits defenses, and they are common. As Appellees argued below, if the trier of fact agrees that the Secretary's policy choices reflect indifference, a central question in the case will be resolved in every class member's favor. If the factfinder agrees with the Secretary, a central question will be resolved against every class member and in the Secretary's favor. That is the hallmark of a predominant common question.

**2. The class is defined by a common cause, not by the reasonableness of individual delays.** Appellant's principal objection is that each class member's delay had its own cause, requiring "mini-trials." Pet. 27–28; Reply Br. 6. That argument attacks an issue the certified class does not present.

True, courts have declined to certify overdetention classes that turn not on policy decisions, but solely on "whether the amount of delay is unreasonable," because that inquiry requires "individualized determinations about the reason the inmate's release was delayed." *Healey*, v. *Louisville Metro Government*, 2021 WL 149859, at *16 (W.D. Ky. Jan. 15, 2021); *see Portis* v. *City of Chicago*, 613 F.3d 702, 705 (7th Cir. 2010). But courts routinely certify classes that "answer questions about whether a municipality's policy (or lack of one) for releasing inmates caused over-detentions." *Healey*, 2021 WL 149859, at *17; *see Driver* v. *Marion County Sheriff*, 859 F.3d 489, 494 (7th Cir. 2017). Indeed, *Portis* recognized that "class treatment might be appropriate if the class sought to establish that a jurisdiction had *adopted a policy of deliberate delay*." *Portis*, 613 F.3d at 705 (emphasis added).

This class falls squarely in the latter category. It is limited to persons held more than 48 hours past their release dates "due to Defendant's failure to implement and maintain an adequate process for timely releasing inmates." ROA.25-30644.6359. As the district court explained, "the key is *not* the number of hours class members were overdetained. Rather, the key is what *caused* those overdetentions—namely, LeBlanc's alleged policies and deliberate indifference." ROA.25-30644.6356. Because the class "is being

certified not based on the reasonableness of the number of hours detained . . . but rather on LeBlanc's overall policies and how those policies led to constitutional violations," it "largely obviates any individual analysis, except with respect to damages." ROA.25-30644.6380. The predominant question for every class member is the same: "whether the DOC's cumbersome paperwork process caused a delay in their release, and whether that delay was reasonable." ROA.25-30644.6058.

Appellant's examples of other causes of delay do not change the analysis. Appellant's claim that individualized review would be required to assess the cause of certain delays such as people held on detainers or people convicted of sex offenses who lack approved residence plans. ROA.25-30644.6044. But such individuals "can be excluded through easily ascertainable data" applied on a class-wide basis. ROA.25-30644.6058. *See* ROA.25-30644.6359. Whether a particular person falls within the definition is a membership question resolved from the DOC's records, not a liability question requiring a mini-trial. *See infra* Part II.B.4.

Nor does *Connick* v. *Thompson*, 563 U.S. 51 (2011), require individualized proof. Appellant argues that each class member must prove the Secretary's knowledge of the specific deficiency that delayed his release.

Reply Br. 8–12. But the class is defined by an overarching deficiency—the DOC's lack of policies and procedures to ensure timely release—and the pattern evidence relates to that same deficiency. *See* ROA.25-30644.6075–76. That is precisely the theory this Court accepted in *Crittindon* v. *LeBlanc,* 37 F.4th 177 (5th Cir. 2022, where the Secretary's knowledge of "on average, a month-long delay in receiving paperwork from the local jails," and his failure to address it, sufficed to defeat summary judgment. 37 F.4th at 188; *see id.* at 186–88. Proof of that knowledge, and of the Secretary's response, is the same for every class member. Indeed, *Hicks* v. *LeBlanc*, 832 F. App'x 836 (5th Cir. 2020), *Taylor* v. *LeBlanc,* Civ. No. 21-72, Dkt. 10 (M.D. La., Sept. 13, 2021), *McNeal* v. *LeBlanc*, 90 F.4th 425 (5th Cir. 2024), and *Crittindon* "serve as a test-proof of the common nature of the deliberate indifference claims": "each case involved a different plaintiff, with a different sentence, different jail credits, and a different criminal history, yet in each case the court held that Secretary LeBlanc could be held liable . . . based on essentially the same evidence." ROA.25-30644.2011.

**3. Qualified immunity presents a common question.** For the reasons explained in Part I, Appellant's qualified-immunity defense turns on his knowledge of a statewide pattern and on whether the right to timely release

was clearly established—questions with a single answer for the class. *See supra* Part I. The district court accordingly found that "deliberate indifference is the central issue in this case, and variations in individual circumstances do not change that fact." ROA.25-30644.6379.

**4. Identifying class members requires only objective, clerical review.**

"Common issues will predominate if 'individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria—thus rendering unnecessary an evidentiary hearing on each claim.'" *Soutter* v. *Equifax Info. Servs., LLC*, 307 F.R.D. 183, 214 (E.D. Va. 2015). The DOC's own witness reviewed sentencing and release data for 231 people in DOC custody in "roughly 20 hours," or about 5.2 minutes each, and the DOC can identify most class members from three data points, all of which are captured in the "pull documents" DOC has produced in this action: the raw GTPS date, the release date, and the sentencing date. *See* ROA.25-30644.6343–44, 6399. Appellant's contention that this review requires specialized knowledge, ROA.25-30644.6043–44, does not make it individualized. The determinations required to calculate the length of a sentence are "simple, straightforward, and objective," which is "the epitome

of a qualitatively insignificant question under the predominance test." ROA.25-30644.6399 (quoting *Soutter*, 307 F.R.D. at 215).

**5. Damages do not defeat predominance.** Appellant relies on *Allison* v. *Citgo Petroleum Corp.*, 151 F.3d 402, 416–17 (5th Cir. 1998) and *Steering Committee* v. *Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006) for the proposition that individualized damages preclude certification. ROA.25-30644.4439–41. Those cases involved "emotional and other intangible injuries" that "cannot be calculated by objective standards." *Allison*, 151 F.3d at 417; *Steering Comm.*, 461 F.3d at 602. In *Allison*, the question whether a class member was injured at all could not be separated from damages. 151 F.3d at 417. Neither problem exists here. The district court severed mental anguish and emotional distress damages from the class. ROA.25-30644.6398–99. What remains is an injury every class member shares by definition—days, weeks, or months of lost liberty—with "a ready measure of damages: damage caused by time spent in a cage." ROA.25-30644.4863; *see Menocal* v. *GEO Grp., Inc.*, 882 F.3d 905, 922–23 (10th Cir. 2018).

In any event, "[s]ome degree of individual calculation . . . is not fatal to satisfying predominance." *Angell* v. *GEICO Advantage Ins. Co.*, 67 F.4th 727, 739 (5th Cir. 2023); *see Deepwater Horizon*, 739 F.3d at 815–16 ("[N]othing in

*Comcast* mandates a formula for class-wide measurement of damages in all cases."). Predominance is satisfied where, "[a]lthough calculating damages will require some individualized determinations, . . . virtually every issue prior to damages is a common issue." *Bertulli* v. *Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 298 (5th Cir. 2001). That is this case. And contrary to Appellant's suggestion, ROA.25-30644.6047, the district court did not "manufacture predominance" by severing issues until a common one remained; it found that the claims as a whole are dominated by common questions of liability and that the remaining "question of damages can be severed from that of liability and tried on an individual basis," *Bell Atlantic Corp.*, 339 F.3d at 307 n.16 (citation omitted); *see* ROA.25-30644.6398–99.

Thousands of people suffered the same injury from the same cause: after learning that the DOC was routinely holding people entitled to immediate release, Appellant chose not to fix the problem. ROA.25-30644.1988. "Where numerous people suffer the same injury from a common cause, Rule 23(b)(3) permits the courts to economize resources by trying their claims together." *Id.* The district court did not abuse its discretion in concluding that common questions predominate.

## CONCLUSION

This Court should affirm the district court's order granting in part Plaintiff-Appellees' motion for class certification.

NOVEMBER 10, 2026

Respectfully submitted,

/s/ *Jeremy A. Benjamin*
JEREMY A. BENJAMIN
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 AVENUE OF THE AMERICAS
NEW YORK, NY 10019-6064
TELEPHONE: (212) 373-3000
JBENJAMIN@PAULWEISS.COM

CECELIA TRENTICOSTA KAPPEL
SAMANTHA POURCIAU
MICHAEL ALLEN
THE PROMISE OF JUSTICE INITIATIVE
1024 ELYSIAN FIELDS AVENUE
NEW ORLEANS, LA 70117
TEL: (504) 529-5955
CTKAPPEL@DEFENDLA.ORG
SBOSALAVAGE@DEFENDLA.ORG
MALLEN@DEFENDLA.ORG

WILLIAM MOST
MOST & ASSOCIATES
201 ST. CHARLES AVE.
STE. 2500 #9685
NEW ORLEANS, LA 70170
TEL: (504) 509-5023
WILLIAMMOST@GMAIL.COM

## CERTIFICATE OF SERVICE

I certify that on November 10, 2026, the foregoing was filed electronically using the Court's CM/ECF filing system, which suffices as notice to all counsel of record.

/s/ *Jeremy A. Benjamin*

Jeremy A. Benjamin

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this motion contains 8,059 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f).

This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in a proportionally spaced typeface, 14-point CenturyExpd BT.

/s/ *Jeremy A. Benjamin*

Jeremy A. Benjamin